IN THE UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF MICHIGAN

---

THE HUNTINGTON NATIONAL BANK,

             Plaintiff,

v.

WOLFF LAKE FARMS, L.L.C., JKL FARMS,
LLC, and JARED LaLONE,

             Defendants.

Case No.

---

David E. Bevins (P48955)
RHOADES McKEE, P.C.
Counsel for Plaintiff
55 Campau Ave., N.W., Suite 300
Grand Rapids, MI 49503
(616) 235-3500

---

## PLAINTIFF'S COMPLAINT

Plaintiff The Huntington National Bank, through its attorneys, Rhoades McKee, P.C., states as follows in support of its Complaint relating to the commercial lending relationship between the parties:

1. Plaintiff the Huntington National Bank ("**Huntington**") is a national banking association and is a citizen of Ohio, having a principal office at 41 South High Street, Columbus, Ohio.

2. Defendant Wolff Lake Farms, L.L.C. ("**Wolff Lake**") is a Michigan limited liability company whose registered office is located at 6080 Jensen Road, Fruitport, Michigan 49415, and whose resident agent is Jared LaLone.

3. Defendant JKL Farms, LLC ("**JKL**") is a Michigan limited liability company whose registered office is located at 6080 Jensen Road, Fruitport, Michigan 49415, and whose resident agent is Jared LaLone.

4. Jared LaLone ("**LaLone**") is a Michigan resident whose address is 5005 Jensen Road, Fruitport, MI 49415.

5. The amount in controversy exceeds $75,000.00.

6. Jurisdiction over this matter exists with this Court pursuant to 28 USC §1332(a)(1).

7. Venue is property with this Court pursuant to 28 USC §1391(b)(1).

### COUNT I- BREACH OF CONTRACT – WOLFF LAKE LOAN

8. Paragraphs 1 through 7 are incorporated by reference as though fully set forth herein.

9. For value received, on or about May 4, 2016, Wolff Lake executed and delivered to Huntington a certain Promissory Note in the amount of $500,000.00 (the "**Wolff Lake Loan**"). **Exhibit 1**.

10. For value received, on or about June 29, 2015, and to induce Huntington to make the Wolff Lake Loan, JKL executed and delivered to Huntington a certain Commercial Guaranty whereby it guaranteed the prompt payment and performance of Wolff Lake's then existing or thereafter incurred obligations owing to Huntington.  **Exhibit 2**.

11. For value received, on or about January 4, 2008, January 25, 2008, and April 7, 2011, and to induce Huntington to make the Wolff Lake Loan, LaLone executed and delivered to Huntington certain Commercial Guarantees whereby he guaranteed the prompt payment and performance of Wolff Lake's then existing or thereafter incurred obligations owing to Huntington. **Exhibit 3**.

5165889.2

12. Effective Jun 6, 2019, Wolff Lake, JKL and LaLone executed and delivered to Huntington a Forbearance Agreement (the "**Forbearance Agreement**") whereby, among other things, Wolff Lake, JKL and LaLone admitted default under the Wolff Lake Loan, released Huntington from all claims and waived all defenses. **Exhibit 4**.

13. Wolff Lake, JKL and LaLone have breached their obligations under the documents set forth above by failing to make the monthly payments when due, by failing to continue making the required payments, and by failing to pay off the Wolff Lake Loan indebtedness on or before June 1, 2024.

14. As of October 22, 2024, Wolff Lake, JKL and LaLone are jointly and severally indebted to Huntington pursuant to the Wollf Lake Loan in the amount as follows not including attorneys' fees and costs:

| Principal | Interest | Late Fees | **TOTAL** | Per Diem |
|---|---|---|---|---|
| $326,851.13 | $54,274.70 | $4,209.25 | **$385,335.08** | $79.44298 |

15. In accordance with the loan documents, Wolff Lake, JKL and LaLone are responsible for any and all legal fees and costs, and Huntington is now incurring such legal fees and costs and is entitled to recovery of the same.

WHEREFORE Huntington requests that this Court enter a judgment in its favor and against Wolff Lake, JKL and LaLone, jointly and severally, in the amount of $385,335.08 plus costs, pre-complaint and prejudgment interest and attorney fees as permitted by contract or law, together with any further or different legal or equitable relief this Court deems just.

### COUNT II- BREACH OF CONTRACT – JKL LOAN

16. Paragraphs 1 through 15 are incorporated by reference as though fully set forth herein.

5165889.2

17. For value received, on or about May 30, 2014, JKL and Wolff Lake executed and delivered to Huntington a certain Promissory Note in the amount of $1,191,000.00, which loan was amended from time to time (as amended, the "**JKL Loan**").  **Exhibit 5**.

18. For value received, on or about May 30, 2014, and to induce Huntington to make the JKL Loan, LaLone executed and delivered to Huntington a certain Commercial Guaranty whereby he guaranteed the prompt payment and performance of JKL's and Wolff Lake's then existing or thereafter incurred obligations owing to Huntington.  **Exhibit 6**.

19. Pursuant to the Forbearance Agreement, among other things, Wolff Lake, JKL and LaLone admitted default under the JKL Loan, released Huntington from all claims and waived all defenses. **Exhibit 4**.

20. Wolff Lake, JKL and LaLone have breached their obligations under the documents set forth above by failing to make the monthly payments when due, by failing to continue making the required payments, and by failing to pay off the JKL Loan indebtedness on or before June 1, 2024.

21. As of October 22, 2024, Wolff Lake, JKL and LaLone are jointly and severally indebted to Huntington pursuant to the JKL Loan in the amount as follows not including attorneys' fees and costs:

| Principal | Interest | Fees | **TOTAL** | Per Diem |
|---|---|---|---|---|
| $560,192.24 | $139,910.54 | $5,028.06 | **$705,130.84** | $153.47732 |

22. In accordance with the loan documents, Wolff Lake, JKL and LaLone are responsible for any and all legal fees and costs, and Huntington is now incurring such legal fees and costs and is entitled to recovery of the same.

WHEREFORE Huntington requests that this Court enter a judgment in its favor and against Wolff Lake, JKL and LaLone, jointly and severally, in the amount of $705,130.84 plus costs, pre-

complaint and prejudgment interest and attorney fees as permitted by contract or law, together with any further or different legal or equitable relief this Court deems just.

### COUNT III- BREACH OF CONTRACT – LaLONE LOAN

23. Paragraphs 1 through 22 are incorporated by reference as though fully set forth herein.

24. For value received, on or about January 24, 2007, LaLone executed and delivered to Huntington a certain Business Credit Line Agreement with Account No. 809896 (the "**LaLone Loan**"). **Exhibit 7**.

25. Pursuant to the Forbearance Agreement, among other things, Wolff Lake and JKL became obligated on the LaLone Loan, and together with LaLone, admitted default under the LaLone Loan, released Huntington from all claims and waived all defenses. **Exhibit 4**.

26. Wolff Lake, JKL and LaLone have breached their obligations under the documents set forth above by failing to make the monthly payments when due, by failing to continue making the required payments, and by failing to pay off the Lalone Loan indebtedness on or before June 1, 2024.

27. As of October 22, 2024, Wolff Lake, JKL and LaLone are jointly and severally indebted to Huntington pursuant to the Lalone Loan in the amount as follows not including attorneys' fees and costs:

| Principal | Interest | Fees | **TOTAL** | Per Diem |
|---|---|---|---|---|
| $9,486.40 | $1,413.97 | $300.00 | **$11,200.37** | $2.3716 |

28. In accordance with the loan documents, Wolff Lake, JKL and LaLone are responsible for any and all legal fees and costs, and Huntington is now incurring such legal fees and costs and is entitled to recovery of the same.

WHEREFORE Huntington requests that this Court enter a judgment in its favor and against Wolff Lake, JKL and LaLone, jointly and severally, in the amount of $11,200.37 plus costs, pre-

5165889.2

complaint and prejudgment interest and attorney fees as permitted by contract or law, together with any further or different legal or equitable relief this Court deems just.

## COUNT IV – CLAIM AND DELIVERY

29. Paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

30. On or about January 4, 2008, January 25, 2008, April 7, 2011, May 30, 2014, and May 4, 2016, for value received, Wolff Lake executed and delivered to Huntington Security Agreements in all of its personal property as more fully described in the Security Agreements ("**Wolff Lake Collateral**"), which assets were pledged as security for all of Wolff Lake's then-existing or thereafter incurred obligations owing to Huntington. **Exhibit 8**.

31. On or about May 30, 2014, for value received, JKL executed and delivered to Huntington a Security Agreement in all of its personal property as more fully described in the Security Agreement (the "**JKL Collateral**"), which assets are pledged as security for all of JKL's then-existing or thereafter incurred obligations owing to Huntington. **Exhibit 9**.

32. On or about May 30, 2014, for value received, Wolff Lake executed and delivered to Huntington an Assignment of Life Insurance Policy as Collateral relating to Term Life Insurance Policy No. ending in 3203 in the amount of $750,000.00 on the life of Jared R. LaLone, issued by Ohio National Life Insurance Company ("**Ohio National Policy**"), as security for Wolff Lake's then-existing or thereafter incurred obligations owing to Huntington. **Exhibit 10.**

33. On or about June 23, 2014, for value received, JKL executed and delivered to Huntington an Assignment of Life Insurance Policy as Collateral relating to Term Life Insurance Policy No. ending in 539L in the amount of $750,000.00 on the life of Jared R. LaLone, issued by the Cincinnati Life Insurance Company ("**Cincinnati Policy**") as security for JKL's then-existing or thereafter incurred obligations owing to Huntington. **Exhibit 11**.

5165889.2

34. The Wolf Lake Collateral, JKL Collateral, Ohio National Policy and Cincinnati Policy are fully described in the Security Agreements and Assignments. **Exhibits 8 through 11**.

35. The exact value of the Wolf Lake Collateral, JKL Collateral, Ohio National Policy and Cincinnati Policy is not known at this time, but this information will be provided as soon as it is discovered by Huntington.

36. The Wolf Lake Collateral, JKL Collateral, Ohio National Policy and Cincinnati Policy are independent items of property.

37. The basis for Huntington's request for possession of the Wolf Lake Collateral, JKL Collateral, Ohio National Policy and Cincinnati Policy is that Defendants failed to pay the sums due on the agreements between the parties and because Huntington is entitled to the Wolf Lake Collateral, JKL Collateral, Ohio National Policy and Cincinnati Policy pursuant to the Commercial Security Agreements and Assignments.

WHEREFORE, and in addition to the relief requested in the other Counts of this Complaint, Huntington requests that this Court issue an order granting it possession of the Wolf Lake Collateral, JKL Collateral, Ohio National Policy and Cincinnati Policy with the right to sell such personal property, apply the net proceeds to the amounts due Huntington, and grant any further or other legal or equitable relief this Court deems just.

### COUNT V- JUDICIAL FORECLOSURE OF REAL PROPERTY

38. Paragraphs 1 through 37 are incorporated by reference as though fully set forth herein.

39. On or about May 30, 2016, for value received, JKL executed and delivered to Huntington two mortgages on certain real property commonly known as 6080 Jensen Road ("**6080 Jensen**"), the first of which mortgage was recorded on June 20, 2014, at Liber 4024, Page 892 Muskegon County Records, and the second was recorded on June 20, 2014, at Liber 4024, Page

5165889.2

893, pursuant to which mortgages 6080 Jensen exists as security for all of JKL's then-existing or thereafter obligations owing to Huntington. **Exhibit 12**.

40. On or about May 30, 2016, for value received, LaLone executed and delivered to Huntington a mortgage on certain real property commonly known as 5005 Jensen Road ("**5005 Jensen**"), which mortgage was recorded on June 20, 2014, at Liber 4024, Page 891 Muskegon County Records, pursuant to which mortgage 5005 Jensen exists as security for all of JKL's then-existing or thereafter obligations owing to Huntington. **Exhibit 13**.

41. Pursuant to the Forbearance Agreement, all of the mortgages and the properties recited in this Count are cross-collateralized and cross-defaulted. **Exhibit 4**.

42. Huntington has not previously brought an action seeking to recover all or part of the debt secured by the mortgages recited herein.

43. Huntington is entitled to foreclose on the mortgages recited herein pursuant to MCL 600.3101 *et seq*. due to Wolff Lake's, JKL's and LaLone's failures as outlined above and pursuant to the documents between the parties.

WHEREFORE Huntington requests that this Court enter an Order granting the following relief:

A. Upon Wolff Lake, JKL or LaLone failing to pay the amounts due, ordering the Dangle Property, 6080 Jensen and 5005 Jensen to be offered for public sale at such time and place and in such a manner as this Court deems proper consistent with Michigan law.

B. Provide that, subsequent to the foreclosure sale, and the running of any period of redemption, upon the failure of Wolff Lake, JKL or LaLone to pay the indebtedness determined by this Court to be due to Huntington, JKL and Lalone and all parties claiming from or under them be foreclosed and barred from any and all equity of

5165889.2

redemption and all claims of, in and to the Dangle Property, 6080 Jensen and 5005 Jensen.

C. Order JKL and Lalone and all parties claiming from or under them, or who have otherwise come into possession of the Dangle Property, 6080 Jensen and/or 5005 Jensen, or any portion thereof, during the pendency of this suit, to deliver and yield possession of those properties upon production or authentication of the deed to be executed pursuant to such sale, and a certified copy of the order of judgment confirming the report of such sale, after such order of judgment has become absolute.

D. Order the net proceeds received from such public sale to be paid to Huntington in satisfaction, or in partial satisfaction, of the amount determined to be due to Huntington as set forth herein, with any surplus realized from the sale to be disposed of and distributed as the Court may direct.

E. Grant such further or other legal or equitable relief this Court deems just.

## COUNT VI - APPOINTMENT OF A RECEIVER

44. Paragraphs 1 through 44 are incorporated by reference as though fully set forth herein.

45. In each of the mortgages and security agreements identified herein, Wolff Lake, JKL and LaLone, as applicable, agreed to appointment of a receiver following default by, among other things agreeing that, "A court may also appoint a receiver for the [Property/Collateral] in any other circumstances permitted by law." . **Exhibits 8, 9, 10, 11, 12 and 13**.

46. Based on a search of the Muskegon County taxing authority, real property taxes for 6080 Jensen are past due for 2022 and 2023 in the amount of $13,781 and the 2024 Summer taxes are due in the amount of $4,390.70.

5165889.2

47. JKL agreed to appointment a receiver for failure to pay real property taxes. **Exhibit 12**.

48. Wolff Lake, JKL and/or LaLone are using the subject real properties for their commercial farmer activities but not paying Huntington.

49. Defendants' breach of the contracts between the parties provides further justification for appointment of a Receiver.

50. Huntington is entitled to appointment of a receiver pursuant to this Court's equitable powers and MCL 554.1016(1)(a)(i) and (2)(a) and (c).

51. The receiver's powers shall include the among other powers, the power to sell the Real Property if such sale is appropriate in the receiver's judgment and, without limitation, those powers enumerated in MCL 554.1011, *et seq*.

52. Huntington will propose the appointment of M. Shapiro Management Company as the receiver by way of separate motion.

WHEREFORE Huntington requests that this Court enter an Order appointing a receiver, which receiver shall have the powers enumerated in MCL 554.1011 *et seq*. or as identified by this Court, and grant such different or further legal or equitable relief as this Court deems just.

Dated: November 7, 2024

                                                RHOADES McKEE, PC
                                              Attorneys for The Huntington National Bank

By: /s/ David E. Bevins
    David E. Bevins (P48955)
Business Address:
    55 Campau Ave. NW Suite 300
    Grand Rapids, MI 49503
    Telephone: (616) 235-3500
    debevins@rhoadesmckee.com

5165889.2